In the United States Court of Appeals for the Fourth Circuit

_____

IN RE ELON MUSK, IN HIS OFFICIAL CAPACITY; UNITED STATES DOGE SERVICE; DEPARTMENT OF GOVERNMENT EFFICIENCY; UNITED STATES DEPARTMENT OF STATE; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT; MARCO RUBIO, IN HIS OFFICIAL CAPACITY; PETER MAROCCO, IN HIS OFFICIAL CAPACITY; JEREMY LEWIN, IN HIS OFFICIAL CAPACITY; KENNETH JACKSON, IN HIS OFFICIAL CAPACITY; AND AMY GLEASON, IN HER OFFICIAL CAPACITY

*Petitioners*,

_____

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

_____

**BRIEF OF PLAINTIFFS-RESPONDENTS IN OPPOSITION TO THE GOVERNMENT'S PETITION FOR WRIT OF MANDAMUS**

_____

Richard M. Heimann*
Nicole M. Rubin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

Mimi Marziani
Rebecca (Beth) Stevens*
Joaquin Gonzalez
MARZIANI, STEVENS & GONZALEZ
1533 Austin Highway
Suite 102-402
San Antonio, TX 78218
(212) 343-5604

Andrew H. Warren
Norman L. Eisen
Tianna J. Mays*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 15180
Washington, D.C. 20003
(202) 594-9958
andrew@democracydefenders.org

*admissions application forthcoming

*Counsel for Plaintiffs-Respondents*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ....................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT ....................................................................................................8

    I.   The Government Lacks a Clear and Indisputable Right to Relief...............9

        A.   The Government Has Not Shown that the Deponents Are
            "High-Ranking" Government Officials Who Should Be
            Excused from Deposition on Separation of Powers Grounds. ...............9

        B.   The Government Has Not Shown that the District Court Erred
            in Finding "Extraordinary Circumstances" Justify the
            Depositions. ..........................................................................................14

        C.   The Government's Other Arguments Lack Merit. ...............................17

    II.  The Government Has Not Demonstrated that It Lacks Other
        Adequate Means of Relief.........................................................................18

    III. The Court Should Exercise Its Discretion to Deny the Petition. ................19

CONCLUSION ................................................................................................20

## INTRODUCTION AND SUMMARY

This Court should deny the government's petition for mandamus relief. Mandamus is reserved for the exceedingly rare situation where the petitioner has a "'clear and indisputable'" right to relief and "'no other adequate means'" to secure it. *In re Moore*, 955 F.3d 384, 388 (4th Cir. 2020) (internal citations omitted). Here, the government has satisfied neither condition.

The government has not demonstrated a clear and indisputable right to relief. The district court correctly concluded that the four former and current officials whose depositions the government seeks to prevent are not "high-ranking officials." The government's brief identifies no case in which a court has blocked depositions of officials like these: officials who are not agency heads, are not Senate-confirmed, and hold (or held) advisory positions or are in (or were) acting or otherwise temporary positions. Any separation of powers justification for avoiding the burden of a deposition is not present where the agency at which two of these officials worked no longer in effect exists. Nor does such justification exist for Elon Musk, a private citizen who holds no government role.

Even if the individuals at issue were at one time such "high-ranking officials," the district court properly held that "extraordinary circumstances" justify the depositions. Plaintiffs sought the depositions to obtain unique, first-hand knowledge of events essential to their case, not readily obtainable through other means.

1

Specifically, the district court found that the deponents at issue made the decisions to shut down USAID's headquarters and website "orally, with no documentary record, such that the only evidence . . . would be the oral testimony of the officials present when the decisions were made." Add. 96.

The government has also failed to show that it has "no other adequate means" of obtaining relief. It has not shown, for example, why the ordinary mechanisms of objecting to or moving to limit depositions would be inadequate here. For one deponent for which mandamus relief is sought—Gleason—the government did not even move in the district court for a protective order.

The district court carefully and correctly resolved the matter below, and the government has failed to meet its burden for the extraordinary relief of mandamus. This Court should therefore deny the petition.

## BACKGROUND

In February 2025, Plaintiffs, recently terminated employees and contractors of the United States Agency for International Development ("USAID"), brought this action to enjoin Elon Musk and his Department of Government Efficiency enterprise, from taking unconstitutional action to dismantle USAID. Plaintiffs asserted two principal claims: that Musk and the other defendants' actions violated both the Appointments Clause and the separation of powers. They sought preliminary injunctive relief on those claims.

On March 18, 2025, the district court granted "some but not all of the [preliminary injunctive] relief requested." *Does 1-26 v. Musk*, 771 F.Supp.3d 637, 684 (D. Md. 2025). The government filed an emergency motion in this Court for an administrative stay and a stay pending appeal of the district court's preliminary injunction order. On March 28, 2025, this Court granted the government's request for a stay pending appeal in a short *per curiam* opinion. *See Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *1 (4th Cir. Mar. 28, 2025).

Judge Quattlebaum (joined by Judge Niemeyer) stated in a concurring opinion that the government had satisfied the standard under *Nken v. Holder*, 556 U.S. 418 (2009) for a stay of a preliminary injunction pending appeal. *See id.* at *7 (Quattlebaum, J., concurring). He also added: "[N]one of this is to say that plaintiffs will not be able to develop evidence of unconstitutional conduct as the case progresses. Time will tell. Our holding is merely that, at this time, the record does not support the district court's finding . . . ." *Id.* at *4. Judge Gregory separately concurred in the result only because the complaint "failed to include the proper Defendants" necessary for injunctive relief. *See id.* at *7 (Gregory, J., concurring in the result). Otherwise, in his view, "the Executive's actions violated the separation of powers" and Musk acted "in violation of the of the Appointments Clause." *Id.* at *7.

Following this Court's stay order, Plaintiffs returned to district court to file an amended complaint adding defendants. On May 1, 2025, the government moved to dismiss the amended complaint. The district court largely denied the government's motion. *See Does 4, 7, 22, 27, 28, & 29 v. Musk*, No. 25 Civ. 462, 2025 WL 2346258, at *21 (D. Md. Aug. 13, 2025). On January 26, 2026, the district court denied the government's motion to certify the motion to dismiss order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See Does v. Musk*, No. 25 Civ. 462, 2026 WL 242062, at *7 (D. Md. Jan. 29, 2026).

In discovery, Plaintiffs sought evidence concerning the timing, role, and involvement of Defendants Musk, Marocco, Lewin in directing the shutdown of USAID, including its headquarters and website. Plaintiffs attempted to obtain this information first through served interrogatories and requests for production. The government did not meaningfully comply with these requests. For instance, rather than directly answer an interrogatory asking it to identify "who made the decision to shut down USAID's website," the government identified an individual who "effectuated" changes to the website in consultation with others. S.A. 12. The government also refused to directly answer interrogatories asking "who made the decision . . . [to] remov[e] [the] plaques with USAID's official seal from USAID headquarters" and to identify meetings in which Musk participated between December 1, 2024 and May 31, 2025 concerning the dismantling, closing,

reorganization, or restructuring of USAID. S.A. 4-5, 14. None of the documents produced addressed these questions.

Plaintiffs first took depositions of former USAID officials: Brian McGill, John Voorhees and Patrick J. Butler (former USAID security officials); Gavin Kliger (DOGE personnel); Jason Gray (former USAID Chief Information Officer and briefly, in early 2025, the USAID Acting Administrator). These deponents could not speak with any specificity to key issues: the timing, role, and involvement of Defendants Musk, Marocco, and Lewin in shutting down USAID, including the closure of its headquarters and website.

Plaintiffs sought to depose Musk, Marocco, Gleason, and Lewin, while also offering to stipulate to facts to be elicited there in order to narrow the scope of the depositions. The government rejected the stipulations and objected to these depositions as seeking irrelevant, unnecessary, and unduly burdensome discovery, and as violating separation of powers principles. At the next court conference, the district court rejected the government's claim that deposing Musk, Marocco, and Lewin was unnecessary or disproportional to the needs of the case.

> One [issue to address] is the argument that the request for discovery such as the depositions of Mr. Musk, Mr. Marocco, and Mr. Lewin is unnecessary and disproportioned [sic] to the needs of this case. I entirely disagree with that. I think in the prior opinions it's been quite clear that there are factual issues and these three witnesses clearly have something relevant to those issues. And I don't understand the argument at all that it's

5

disproportionate to the needs of this case. This is -- these are the key people in the case. We're not talking about deposing hundreds of people on wide-ranging issues. This is very focused issues [sic] here. These are clearly key witnesses, so that argument's a nonstarter and I'm going to deny any argument or motion or argument that discovery should be barred because it's unnecessary and disproportionate to the needs of the case.

Tr. 13:7-21, No. 25 Civ. 462 (D. Md.), Dkt. 186.

As to the government's separation of powers argument, the district court invited supplemental briefing. *See id.* at 14:14-15:19. In its supplemental briefing, styled as a motion for protective order, the government conceded that Musk, Marocco, and Lewin "each 'may have first-hand knowledge' of events relevant to Plaintiffs' claims." Mot. for Protective Order at 4, No. 25 Civ. 462 (D. Md.), Dkt. 189-1.

On February 4, 2026, the district court denied the government's motion for a protective order in a carefully written opinion. *See* Add. 89-96. Assuming that, in the absence of extraordinary circumstances, high-ranking government officials may not be deposed regardless of whether testimony about their mental processes is sought, the district court concluded that it was "at best unclear" whether the Musk, Marocco, and Lewin were high-ranking officials within the scope of the doctrine. *Id.* at 93. The district court observed that "USAID was not a cabinet-level agency, none of the designated officials were the head of that agency, and several were operating in an informal or acting role at the time of the relevant events." *Id.* It also

explained that the animating reason for the doctrine—the time demands faced by high-ranking government officials—did not apply where the government "ma[d]e no argument about the duties and time constraints relating to any current government positions" held by the deponents. *Id.*

In the alternative, the district court concluded that extraordinary circumstances justified the depositions. *See id.* at 94-96. In reaching its conclusion, the district court observed that "Plaintiffs' Appointment Clause claim is based on the allegation that Musk made certain decisions relating to the shutdown and dismantling of USAID." *Id.* at 94; *see also id.* at 95 ("Marocco and Lewin have [also] been identified as having been personally involved with the shutdown activities in the same timeframe . . . ."). It concluded that Plaintiffs had demonstrated a need for the deponents' testimony that is essential to their case by showing that Musk, Marocco, and Lewin had unique, first-hand knowledge of the decisions to shut down USAID's headquarters and website: "Defendants . . . have effectively acknowledged that these orders were given orally, with no documentary record, such that the only evidence . . . would be the oral testimony of the officials present when the decisions were made." *Id.* at 96. The government had "never . . . identified any lower-ranking officials who were present when such decisions were made." *Id.*

The district court also recounted Plaintiffs' less intrusive efforts to obtain this discovery, noting that they were unsuccessful. *See id.* at 95-96 ("Plaintiffs . . . have

submitted requests for stipulations and interrogatories to which Defendants have not responded adequately or at all"). It further observed that the government could freely seek "limitations on the subject matter of the deposition rather than outright preclusion." *Id.* at 94. Based on its thorough consideration, the district court concluded that there was "no alternative to the proposed depositions of Musk, Marocco, and Lewin." *Id.* at 96.

At a hearing the next day, the government asserted an oral objection to Gleason's deposition based on separation of powers principles. The district court indicated that its ruling applied to Gleason but stated: "If there's a need for a motion on that, then I suppose you could file it." *Id.* at 72. The government did not file a motion to preclude Gleason's deposition.

On February 13, 2026, the government filed the instant mandamus petition. The petition requests that this Court issue a writ of mandamus "directing the court to vacate its February 4, 2026 order and grant the government's motion for a protective order." Pet. at 3.

## ARGUMENT

Mandamus is a "'drastic remedy that must be reserved for extraordinary situations.'" *In re Moore*, 955 F.3d at 388 (quoting *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018)). The petitioner bears the heavy burden of showing that their right to relief is "'clear and indisputable'" and that they have "'no other

adequate means'" to secure their desired relief. *In re Murphy-Brown, LLC*, 907 F.3d

788, 795 (4th Cir. 2018) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81

(2004)). A right to mandamus relief is clear and indisputable where the underlying

legal principle "'not only authorize[s] the demanded action, but require[s] it.'" *In re*

*Trump*, 958 F.3d 274, 281 (4th Cir. 2020) (en banc) (quoting *United States ex rel.*

*McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)), *cert. granted, judgment vacated*

*sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021); *see also In re al-Nashiri*, 791 F.3d

71, 82-86 (D.C. Cir. 2015) (requiring "'clear' *ex ante*" answer (internal citation

omitted)). If an "'alternative, less extreme'" path to relief exists, "'issuance of the

writ is inappropriate.'" *In re Trump*, 958 F.3d at 281 (internal citation omitted).

Even if both conditions are met, the petitioner is not entitled to relief: the Court may

deny the writ "'in the exercise of its discretion.'" *In re Trump*, 958 F.3d at 281

(quoting *Cheney*, 542 U.S. at 380-81).

**I.     The Government Lacks a Clear and Indisputable Right to Relief**

The government's arguments fail to establish a clear and indisputable right to

mandamus relief.

**A. The Government Has Not Shown that the Deponents Are "High-Ranking" Government Officials Who Should Be Excused from Deposition on Separation of Powers Grounds.**

As an initial matter, the government contends that the district court erred by

"misread[ing]" this Court's approach to the doctrine concerning depositions of high-

ranking government officials by construing it to be limited to circumstances where a deposition seeks testimony about mental processes. Pet. at 21. This argument is a red herring. The district court assumed for purposes of its analysis that "depositions of high-ranking government officials should be restricted absent extraordinary circumstances *regardless of whether they seek testimony on mental processes*" and concluded that the government's requested relief was still not warranted. Add. 93, 96 (emphasis added). The government's recitation of the "startling implications" of the district court's opinion, Pet. at 20, rests on the government's own misreading of that opinion.

The district court ruled correctly that Musk, Marocco, and Lewin are not high-ranking officials for these purposes. The government has not cited any case in the Fourth Circuit or elsewhere demonstrating that former and current officials like Musk, Marocco, Lewin, and Gleason are sufficiently high-level that separation of powers considerations demand that they be excused from the ordinary obligation of a deposition. The circuit cases that the government cites, Pet. at 17-19, 22-23 (listing cases), involve deponents serving in very different roles with very different responsibilities. These cases concern, for example, Senate-confirmed officials,[1]

---

[1] *See In re United States (Kessler)*, 985 F.2d 510, 512-13 (11th Cir. 1993) (per curiam) (Commissioner of the Food and Drug Administration); *In re FDIC*, 58 F.3d, 1055, 1060 (5th Cir. 1995) (FDIC Board members); *In re United States (Holder)*, 197 F.3d 310, 316 (8th Cir. 1999) (Attorney General and Deputy Attorney General);

elected officials,[2] a Vice President's Chief of Staff,[3] and appointed officials owed "absolute discretion."[4]

Where such individuals are sought to be deposed, courts sometimes—though not always[5]—will block their depositions.

None of the witnesses the government seeks to protect from being deposed is

---

*In re United States (Jackson)*, 624 F.3d 1368, 1374 (11th Cir. 2010) (EPA Administrator); *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (Chairman of the Federal Reserve Board); *In re McCarthy*, 636 F. App'x 142, 142-43 (4th Cir. 2015) (EPA Administrator); *In re Dep't of Com.*, 586 U.S. 956, 956, 957 (2018) (Secretary of Commerce); *In re Commodity Futures Trading Comm'n*, 941 F.3d 869, 873-74 (7th Cir. 2019) (CFTC Chairman and Commissioners but also staff); *In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020) (former Secretary of State); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022) (former Secretary of Education); Order, *In re Murthy*, No. 22-30697 (5th Cir. Nov. 21, 2022) (per curiam), Dkt. 26 (two senate-confirmed officials but also Deputy Assistant to the President).

[2] *See In re Paxton*, 60 F.4th 252, 254-55 (5th Cir. 2025) (Texas Attorney General); *In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1256, 1263 (10th Cir. 2022) (per curiam) (Utah Attorney General).

[3] *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam) (Vice President's Chief of Staff).

[4] *See Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (Parole Board members receiving "'absolute discretion in matters of parole'" (citation omitted).

[5] *See In re Garland*, No. 23-5154, 2023 WL 5662104, at *1 (D.C. Cir. Sept. 1, 2023) (per curiam) (allowing deposition of former President of the United States); *see also D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1238 (D.C. Cir. 1971) (approving of decision to require testimony from the Secretary of Transportation); *United States v. 2,606.84 Acres of Land in Tarrant Cnty.*, 432 F.2d 1286, 1288 n.2 (5th Cir. 1970) (discussing judicial stay of condemnation action until the Secretary of the Army appeared for a deposition).

akin to a Senate-confirmed official, elected official, a Vice President's Chief of Staff, or appointed official owed absolute discretion. Instead, three of the deponents are non-confirmed officials for second-tier positions—all in an acting capacity. *See* Pet. at 3 ("Gleason is Acting Administrator of the United States DOGE Service, a component of the Executive Office of the President; Marocco was Acting USAID Deputy Administrator; and Lewin was UASID Deputy Administrator and Chief Operating Officer."). The final deponent, Elon Musk, served previously in the amorphous role of "Senior Advisor to the President" as an unpaid "special government employee"[6]—a classification shared by thousands of federal government employees. *See, e.g.*, 18 U.S.C. § 202(a); U.S. Gov't Accountability Off., GAO-16-548, Federal Workforce: Opportunities Exist to Improve Data on Selected Groups of Special Government Employees 2 (July 15, 2016) ("Over a 10-year period (2005 to 2014), GAO found that agencies used an annual average of approximately 2,000 SGEs").

For officials serving in roles below the level of agency head, federal courts have not stood in the way of depositions. *See In re United States (Jackson)*, 624 F.3d at 1377 (Assistant Administrator for the EPA); *In re Clinton*, 973 F.3d at 109, 121 (Chief of Staff to former Secretary of State); *In re Dep't of Com.*, 586 U.S. at

---

[6] *See* Sareen Habeshian, *Musk Adds 'Special Government Employee' to Resume*, Axios (Feb. 4, 2025), https://www.axios.com/2025/02/05/elon-musk-trump-special-government-employee.

956, 957 (Assistant Attorney General), *US Dep't of Educ.,* 25 F.4th at 704-05 (Undersecretaries of Education); *In re Cheney*, 544 F.3d at 314 (inviting deposition of Vice President's Deputy Chief of Staff). In this past year, district courts have refused to block depositions or testimony of the Commander at Large of the U.S. Border Patrol, a former Field Director for Immigrations and Customs Enforcement, and the Acting Director of Personnel Management. *See* Minute Entry, *Chi. Headline Club v. Noem*, No. 25 Civ. 12173 (N.D. Ill. Oct. 23, 2025), Dkt. 87 (expanding time for the deposition of Gregory Bovino, Commander at Large of the United States Border Patrol, and Russell Hott, the former Field Director for Immigrations and Customs Enforcement in Chicago); Transcript of Proceedings at 24:13-15, *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, No. 25 Civ. 1780 (N.D. Cal. Mar. 7, 2025), Dkt. 65 (directing the government to make Chuck Ezell, the Acting Director of the Office of Personnel Management, available for cross examination).

Allowing the depositions of Musk, Marocco, Lewin, and Gleason to proceed would not threaten the separation of powers. Only one of the deponents (Gleason) is even still in her role. As for the other three, one (Musk) has left government entirely (Musk) and two (Marocco and Lewin) are now serving in different roles (Marocco and Lewin). *Cf. Trump v. Mazars USA, LLP*, 39 F.4th 774, 806 (D.C. Cir. 2022) ("Now that [the President] is out of office, any burdens the Committee's subpoena imposes on him will no longer distract the head of the Executive

Branch."); *In re U.S. Dep't of Educ.*, 25 F.4th at 708 (Paez, J., dissenting) ("[T]he threat of a potential deposition after leaving office [should not] affect a cabinet secretary's actions while in office, the decision to accept an appointment, or the decision to remain in office."); *see also id.* at 707 n.2.

The government's contention that the depositions of Musk and Gleason will "intrude on the President's performance of his constitutional duties," Pet. at 22, is both unexplained and not credible. And as to the two former USAID officials—Marocco and Lewin—the government also does not explain how their depositions could possibly burden the separation of powers when the agency they were a part of, USAID, effectively no longer exists. *See id.* at 23. If there is no separation of powers threat posed by a deposition of President Trump when he was out of office, *see In re Garland*, 2023 WL 5662104, at *1, there can hardly be any concern of a constitutional magnitude here.

## B. The Government Has Not Shown that the District Court Erred in Finding "Extraordinary Circumstances" Justify the Depositions.

The government also offers no credible reason to believe the district court erred in finding that "extraordinary circumstances" justify the depositions.

Following this Court's opinion last March, one of the primary issues for discovery was the timing, role, and involvement of Defendants Musk, Marocco, and Lewin in shutting down USAID, including by closing its headquarters and website. Plaintiffs attempted to obtain this information first through served interrogatories

and requests for production. But the government refused to fully answer interrogatory questions on the relevant topics. None of the documents produced directly addressed key questions Plaintiffs had asked. Plaintiffs turned to depositions of former USAID officials: McGill, Voorhees, and Butler (former USAID security officials); Kliger (DOGE personnel); and Gray (former USAID Chief Information Officer, and briefly in early 2025, the USAID Acting Administrator). But these deponents could not speak with any specificity to the key issue in the case: the timing, role, and involvement of Defendants Musk, Marocco, Gleason, and Lewin in shutting down USAID, including by closing its headquarters and removing its website. After exhausting these alternative efforts, Plaintiffs offered to reach a stipulation on those issues. After initially agreeing to work toward stipulations months ago, the government has not provided proposed counter-stipulations to the initial draft provided by plaintiffs.

These four depositions appropriately target officials that have unique "first-hand knowledge related to the claim being litigated," *Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir. 2007), that is "essential" to the case, *In re Off. of the Utah Att'y Gen.*, 56 F.4th at 1260. *See* Add. 94-96. As the district court explained, "Plaintiffs' Appointment Clause claim is based on the allegation that Musk made certain decisions relating to the shutdown and dismantling of USAID." Add. 94; *see also id.* at 95 ("Marocco and Lewin have [also] been identified as having been

personally involved with the shutdown activities in the same timeframe"). Musk, Marocco, Lewin, and Gleason should each have unique insight into these decisions. Defendants "effectively acknowledged" below that "these orders were given orally, with no documentary record, such that the only evidence . . . would be the oral testimony of the officials present when the decisions were made." *Id.* at 94. The government has "never . . . identified any lower-ranking officials who were present when such decisions were made." *Id.* at 96. Based on its thorough consideration, the district court concluded that there was "no alternative to the proposed depositions of Musk, Marocco, and Lewin." *Id.* at 96.

The government suggests that "[e]xisting discovery" offers an alternative to the depositions that Plaintiffs seek. Pet. at 29. But they offer no cogent explanation as to why this discovery—notwithstanding the district court's conclusion to the contrary—can supply Plaintiffs with the critical information that they need about the key decisions relating to the shutdown and dismantling of USAID. Nor has the government explained why Plaintiffs should be forced to continue pursuing written discovery as an alternative to depositions, *id.* at 30, when the government has already declined to respond to interrogatories designed to shed light on the key decisions on which the depositions would be focused.

### C. The Government's Other Arguments Lack Merit.

The government's remaining arguments—that Plaintiffs lack standing, that there is a lack of subject matter jurisdiction, and that Plaintiffs have failed to state claims on which relief can be granted, Pet. at 33-37—seek to challenge the district court's denial of the government's motion to dismiss. Those rulings are not properly before this Court.

To the extent the government is seeking through mandamus to effectively challenge the district court's denial of its motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b), that effort should be rejected. As this Court has explained, mandamus should not be used as a vehicle to litigate the denial of a § 1292(b) motion. *See In re Trump*, 958 F.3d at 283 ("[A]ppellate courts, generally reluctant to issue a writ of mandamus to correct a decision within the discretion of the lower court, have been particularly wary of usurping the discretion Congress specifically vested in the district courts under § 1292(b)."). This is especially true where mandamus "review of a discovery order" would "serve in effect as a vehicle for interlocutory review of the underlying merits of the lawsuit." *In re Exec. Off. of President*, 215 F.3d 20, 23 (D.C. Cir. 2000) (citation omitted). The government's assertion of a supposed "tenuous jurisdictional basis" for this lawsuit is therefore not grounds for the issuance of mandamus relief. Pet. at 33 (quoting *Merhige*, 487 F.2d

at 29).  The government cites no case to the contrary: *Merhige*, for example, did not involve any effort to attack a district court's previous jurisdictional ruling.[7]

In any event, in its § 1292(b) and motion to dismiss rulings, the district court correctly held that Plaintiffs had statutory and Article III standing to pursue this action for the purposes of the motion to dismiss stage.  *See Does 4, 7, 22, 27, 28, & 29*, 2025 WL 2346258, at *8-9 (applying *Thunder Basin* and other relevant frameworks to reject the government's statutory jurisdiction argument); *id.* at *17 (addressing standing).  And contrary to the government's suggestion, Pet. at 34, there is no requirement in the law that Plaintiffs' noticed depositions must bear directly on their theory of injury to demonstrate that they have a need for testimony that is essential to their case.

## II.   The Government Has Not Demonstrated that It Lacks Other Adequate Means of Relief.

This Court should also deny the petition because the government has not even attempted to show that it lacks other adequate means of relief.  Where an "alternative, less extreme" path to relief exists, mandamus must be denied. *In re Trump*, 958 F.3d at 281 (quoting *Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 396 (1976)).

---

[7] In *Merhige*, where the petitioner sought early parole, the lawsuit had a "tenuous jurisdictional basis," 487 F.2d at 29, because the petitioner eventually was granted parole.  *See id.* at 27.  The petitioner did not use mandamus as an effort to collaterally attack an underlying merits opinion.

With respect to all four depositions, the district court has invited the government to seek "limitations on the subject matter of the deposition rather than outright preclusion." Add. 94. To date, the government has not sought such limitations. The government also has at its disposal the ordinary mechanisms for addressing discovery disputes: the government can freely make contemporaneous objections at the deposition, *see* Fed. R. Civ. P. 30(c)(2), and if necessary, it can move to terminate or limit the deposition, *see* Fed. R. Civ. P. 30(d)(3). *See also* Local Rules Appendix A: Guidelines 6-8, U.S. District Court for the District of Maryland (2025) (providing further guidance for policing depositions). The government fails to explain why these ordinary mechanisms for policing depositions would be inadequate here.

For Gleason, the government has never even taken the step of seeking a protective order in the district court. *See* Add. 90. Mandamus relief should be rejected where the petitioning party has not even sought alternative relief.

## III.   The Court Should Exercise Its Discretion to Deny the Petition.

Even if the government had met its burden to demonstrate "clear and indisputable relief" and that they have "no other adequate means" of securing relief—which it has not—the Court should exercise its discretion to deny the petition. Plaintiffs seek depositions of the individuals uniquely positioned to provide information about the key decision at issue here to dismantle and shut down

USAID—the very record evidence that this Court noted was lacking when it granted the government's request for a stay of the district court's preliminary injunction. *See Musk*, 2025 WL 1020995, at *3 (Quattlebaum, J., concurring). Plaintiffs have sought this information in writing through interrogatories and in depositions but have been stymied in obtaining it, either by the government's refusal to answer Plaintiff's interrogatories or by the limitations of other witnesses' knowledge.

And despite the government's histrionic assertions to the contrary, the district court carefully considered the relevant legal principles and applied them faithfully to this case. There is no justification for the extraordinary relief of mandamus in the face of the district court's carefully reasoned consideration.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition.

Dated: February 27, 2026

Respectfully submitted,

*/s/ Andrew H. Warren*

Richard M. Heimann*
Nicole M. Rubin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

Mimi Marziani
Rebecca (Beth) Stevens*
Joaquin Gonzalez

Andrew H. Warren
Norman L. Eisen
Tianna J. Mays*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 15180
Washington, D.C. 20003
(202) 594-9958
andrew@democracydefenders.org

*admissions application forthcoming*

MARZIANI, STEVENS & GONZALEZ
1533 Austin Highway
Suite 102-402
San Antonio, TX 78218
(212) 343-5604

*Counsel for Plaintiffs-Respondents*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this response complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,809 words. This response was prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

Dated: February 27, 2026

*/s/ Andrew H. Warren*
Andrew H. Warren
*Counsel for Plaintiffs-Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: February 27, 2026

*/s/ Andrew H. Warren*
Andrew H. Warren
*Counsel for Plaintiffs-Respondents*

# Supplemental Addendum

1. Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories to Defendants United States DOGE Service, Department of Government Efficiency, and Amy Gleason – S.A. 001

2. Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories to Defendants United States Department of State and Marco Rubio – S.A. 008

J. DOE 4, *et al.*,

    *Plaintiffs*,

v.

ELON MUSK, *et al.*,

    *Defendants*.

Case No. 8:25-cv-00462-TDC

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS UNITED STATES DOGE SERVICE, DEPARTMENT OF GOVERNMENT EFFICIENCY, AND AMY GLEASON

Defendants United States DOGE Service, Department of Government Efficiency, and Amy Gleason (collectively, "Defendants"), respond to Plaintiffs' First Set of Interrogatories as follows:

### Objections to Instructions

1.    Defendants object to all Plaintiffs' instructions, and Instruction No. 1 in particular, to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.

2.    Defendants object to Instruction No. 7 to the extent that it is both inconsistent with the dates set forth in specific interrogatories and to the extent the phrase "complete responses" is vague and ambiguous.  Unless otherwise indicated, Defendants will specify the dates relevant to each response to a particular interrogatory in any response to that interrogatory.

### Objections to Definitions

1.    Defendants object to Definition No. 5 to the extent it refers it incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service."

Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization.

2.       Defendants object to Definition No. 6 as vague and ambiguous, as it refers to any individual who "otherwise works or worked for DOGE." Defendants also object to the Definition No. 6 on the grounds that the inclusion of "volunteers" within its scope is vague and ambiguous. Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization, whether in a paid or unpaid capacity.

3.       Defendants object to Definition No. 8 as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure.

4.       Defendants object to Definition No. 12 on the ground that it is overbroad and not proportional to the needs of the case because it includes, among other individuals, all of Defendants' thousands of current and former employees regardless of their position and regardless of their involvement in the events giving rise to the claims or defenses in these cases. Defendants will construe this definition, and the requests generally, to be limited to seek information from persons who are reasonably likely to have information relevant to the claims or defenses in these cases and responsive to Plaintiffs' interrogatories.

**Objections to All Interrogatories**

1.       Defendants object to Plaintiffs' interrogatories because discovery is inappropriate at this time in light of Defendants' pending motion to stay discovery during the pendency of any interlocutory appeal, ECF No. 166. Defendants further object to being obligated to respond to discovery requests during the ongoing lapse in appropriations for most federal agencies. Defendants are prejudiced by being required to respond to discovery during a lapse of

appropriations, during which certain personnel necessary to facilitate Defendants' responses are unavailable. In addition, discovery is inappropriate, inefficient, and unduly burdensome, because for the reasons set forth in Defendants' motion to dismiss and Motion for Certification, the court has no jurisdiction over Plaintiffs' claims and the material facts are undisputed and Plaintiffs' claims thus present pure questions of law. *See also* Pls. Request for Leave to File Mot. for Partial Summ. J. at 2, ECF No. 159.

2.      Defendants object to Plaintiffs' interrogatories to the extent that they seek information protected against disclosure by: (a) the attorney work product doctrine; (b) the attorney-client privilege; (c) the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, or the state secrets privilege; (d) any other form of executive privilege; or (e) any other applicable privilege or protection.

3.      Defendants do not waive, and hereby expressly reserve their rights to assert any and all objections to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendants make the responses herein without in any manner implying or admitting that the discovery requests are relevant or material to the subject matter of this action.

4.      Defendants object to these interrogatories to the extent that they seek information protected against disclosure by the Privacy Act, *see* 5 U.S.C. § 552a, and the privacy interests and expectations of persons not party to this litigation.

5.      Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the

"administrative record" in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That said, Defendants understand that the Court has allowed discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make further specific objections stated below.

5. Defendants incorporate all of the foregoing objections in each of the responses below regardless of whether a specific objection is reasserted with respect to a specific interrogatory. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that interrogatory. Moreover, the assertion of the same, similar, or additional objections in response to a specific interrogatory does not waive, limit, or modify any of Defendants' general objections or similar or separate specific objections raised in response to an interrogatory.

6. Defendants expressly reserve the right to supplement, clarify, review, or correct any or all of the responses and objections here, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## Objections and Responses to Specific Interrogatories

**Interrogatory No. 1**: Identify all meetings and discussions with government officials (including other Defendants) that Defendant Elon Musk attended or took part in between December 1, 2024 and May 31, 2025 concerning the dismantling, closing, reorganizing, or restructuring of USAID, including terminating USAID employees or placing them on administrative leave, terminating personal services contractors (PSCs), or terminating USAID contacts or grants.

4

**Objections**: Defendants object on the grounds that such discovery violates the separation of powers and creates an undue burden and distraction from those individuals' critical executive responsibilities. *See Cheney*, 542 U.S. at 389. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a response based on "meetings and discussions" between Defendant Elon Musk and any "government officials (including other Defendants)." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under this request.

**Response**: For the reasons set forth in the above objections, Defendants will not respond to this interrogatory.

**Interrogatory No. 2**: Identify any DOGE personnel who have been detailed to or otherwise worked at USAID at any point from January 20, 2025 through the present, including providing a general description of their duties and responsibilities at USAID.

**Objections**: Defendants incorporate by reference the above objections. Defendants object to Interrogatory No. 2, as it incorporates the definition of DOGE that incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service." Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization. Defendants further object to Interrogatory No. 2 as vague and ambiguous, as it incorporates the definition of DOGE personnel that refers to any individual who "otherwise works or worked for DOGE." Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE

Service Temporary Organization, whether in a paid or unpaid capacity. Defendants also object to the phrase "detailed to or otherwise worked at USAID" as vague and ambiguous.

Defendants will construe that phrase to include any individual who was detailed to or employed by USAID who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

**Response**: Subject to and without waiving the foregoing objections, Defendants are unaware of any individual who was detailed to or employed by USAID who had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

Dated: November 12, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

*/s/ James J. Wen*
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4537
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Defendants*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing interrogatory responses of the United States DOGE Service, Department of Government Efficiency, and Amy Gleason to Plaintiffs' First Set of Interrogatories, dated October 7, 2025, are true and correct, to the best of my knowledge based on information that was made known to me in the course of my official duties.

Dated: November 12, 2025

_____
Amy Gleason

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

J. DOE 4, *et al.*, *on behalf of themselves and all others similarly situated*,

    *Plaintiffs*,

  v.

ELON MUSK, *in his official capacity*, et *al.*,

    *Defendants*.

Case No. 8:25-cv-00462-TDC

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS UNITED STATES DEPARTMENT OF STATE AND MARCO RUBIO

      Defendants United States Department of State and Marco Rubio (hereinafter, "State") hereby respond to Plaintiffs' First Set of Interrogatories to Defendants United States Department of State and Marco Rubio as follows:

### Objections to Instructions

      1.    Defendants object to all Plaintiffs' instructions, and Instruction No. 1 in particular, to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.

      2.    Defendants object to Instruction No. 7 to the extent that it is both inconsistent with the dates set forth in specific interrogatories and to the extent the phrase "complete responses" is vague and ambiguous.  Unless otherwise indicated, Defendants will specify the dates relevant to each response to a particular interrogatory in any response to that interrogatory.

1

**Objections to Definitions**

1.      Defendants object to Definition No. 1 as vague and ambiguous, as it refers to "operations" and "functions" without qualification, as well as referencing "any . . . action mandated by federal statute, including, but not limited to" certain statutes or categories of statutes, without purporting to identify each and every statute intended or statutory provision at issue.

2.      Defendants object to Definition No. 5 as vague and ambiguous and as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure to the extent it refers to a "general course of action the specifics of which can be determined later." Defendants will identify specific decisions to formally approve the Defendant agency to take any specific actions in their responses to particular interrogatories.

3.      Defendants object to Definition No. 6 as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure.

4.      Defendants object to Definition No. 8 to the extent it refers it incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service." Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization.

5.      Defendants object to Definition No. 9 as vague and ambiguous, as it refers to any individual who "otherwise works or worked for DOGE." Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization, whether in a paid or unpaid capacity.

6.      Defendants object to Definition No. 11 as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure.

2

7.     Defendants object to Definition No. 15 on the ground that it is overbroad and not proportional to the needs of the case because it includes, among other individuals, all of Defendants' thousands of current and former employees regardless of their position and regardless of their involvement in the events giving rise to the claims or defenses in these cases. Defendants will construe this definition, and the requests generally, to be limited to seek information from persons who are reasonably likely to have information relevant to the claims or defenses in these cases and responsive to Plaintiffs' interrogatories.

### Objections to All Interrogatories

1.     Defendants object to Plaintiffs' interrogatories because discovery is inappropriate at this time in light of Defendants' pending motion to stay discovery during the pendency of any interlocutory appeal, ECF No. 166.  Defendants further object to being obligated to respond to discovery requests during the ongoing lapse in appropriations for most federal agencies. Defendants are prejudiced by being required to respond to discovery during a lapse of appropriations, during which certain personnel necessary to facilitate Defendants' responses are unavailable.  In addition, discovery is inappropriate, inefficient, and unduly burdensome, because for the reasons set forth in Defendants' motion to dismiss and Motion for Certification, the court has no jurisdiction over Plaintiffs' claims and the material facts are undisputed and Plaintiffs' claims thus present pure questions of law.  *See also* Pls. Request for Leave to File Mot. for Partial Summ. J. at 2, ECF No. 159.

2.     Defendants object to Plaintiffs' interrogatories to the extent that they seek information protected against disclosure by: (a) the attorney work product doctrine; (b) the attorney-client privilege; (c) the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, or the state secrets privilege; (d) any

other form of executive privilege; or (e) any other applicable privilege or protection.

3.      Defendants do not waive, and hereby expressly reserve their rights to assert any and all objections to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendants make the responses herein without in any manner implying or admitting that the discovery requests are relevant or material to the subject matter of this action.

4.      Defendants object to these interrogatories to the extent that they seek information protected against disclosure by the Privacy Act, *see* 5 U.S.C. § 552a, and the privacy interests and expectations of persons not party to this litigation.

5.      Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the "administrative record" in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That said, Defendants understand that the Court has allowed discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make further specific objections stated below.

5.      Defendants incorporate all of the foregoing objections in each of the responses below regardless of whether a specific objection is reasserted with respect to a specific interrogatory. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that interrogatory. Moreover, the assertion of the same, similar, or additional

4

objections in response to a specific interrogatory does not waive, limit, or modify any of Defendants' general objections or similar or separate specific objections raised in response to an interrogatory.

6.     Defendants expressly reserve the right to supplement, clarify, review, or correct any or all of the responses and objections here, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## Objections and Responses to Specific Interrogatories

**INTERROGATORY NO. 1:** Identify the individual(s) who made the decision to shut down USAID's website, which occurred on or about February 1, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**:  Defendants incorporate by reference the above objections.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object that this request is unduly burdensome and not proportional to the needs of this case, insofar as Plaintiffs claims are limited to the Appointments Clause and the separation of powers, neither of which are implicated by the decision whether to maintain a website in operation.  In keeping with those objections, State will construe this interrogatory as requesting the identity of the individual who formally authorized USAID to shut down its website on or about February 1, 2025.

**Response**:  Gavin Kliger effectuated the changes to the USAID website on or about February 1, 2025, in consultation with USAID leadership including Kenneth Jackson, who was then performing the duties of Assistant to the Administrator for Management and Resources.

Since that time, both Secretary of State Rubio and Director of the Office of Management and Budget Russell Vought have been notified that the USAID website has been down and have not taken action to restore it.

**INTERROGATORY NO. 2:** Identify the individual(s) who made the decision to place approximately 57 USAID employees on administrative leave on or about February 1, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). State further objects to this interrogatory as vague and ambiguous, as it does not identify the specific individuals placed on administrative leave by name or office. In keeping with those objections, State will interpret this interrogatory as requesting the identity of the individual who formally approved the placement of approximately 57 USAID employees on administrative leave on or about February 1, 2025.

**Response**: Kenneth Jackson, then performing the duties of Assistant to the Administrator for Management and Resources, authorized the transmittal of administrative leave notices to 57 USAID employees in the Bureau of Legislative and Public Affairs on January 31, 2025. The decision was memorialized and communicated by the documents previously disclosed to the Court. *See* ECF No. 70-2.

**INTERROGATORY NO. 3:** Identify the individual(s) who made the decision for U.S.

Customs and Border Protection to take control of USAID headquarters, including the removal of plaques with USAID's official seal from USAID headquarters on or about January 31, 2025, and the removal of the words "U.S. Agency for International Development" from above the main entrance of USAID headquarters on or about February 7, 2025, when the decision(s) was made, and how the decision(s) was officially memorialized and communicated to those responsible for implementation.

**Objections**:  Defendants incorporate by reference the above objections.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object to this interrogatory because it requests information outside the custody or control of any Defendant.

**Response**:  On February 7, 2025, Michael Peters, Commissioner of Public Buildings Service, U.S. General Services Administration ("GSA"), notified USAID that GSA was terminating USAID's occupancies at the Ronald Reagan Building and International Trade Center in Washington, D.C.  That same day, GSA and the U.S. Customs and Border Protection entered into a temporary license to occupy government space.  These decisions were officially memorialized and communicated by the documents previously submitted to the Court.  *See* ECF Nos. 69-3, 69-4.  Consistent with these developments, USAID then undertook actions to vacate its office space.


**INTERROGATORY NO. 4:** Identify the individual(s) who made the decision to have DOGE personnel, including Steve Davis, Gavin Kliger, Luke Farritor, Noah Peters, and Clayton Cromer, arrive at USAID headquarters between on or about January 27 and February 1, 2025

seeking access to USAID data security systems and physical access to highly restricted areas, including sensitive compartmented information facilities, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**:  Defendants incorporate by reference the above objections.  Defendants object to describing all the listed individuals as "DOGE personnel," insofar as certain of those individuals are not and were not employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization.  If the term "DOGE personnel" is construed to include individuals who are not or were not at relevant times employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization, Defendants object to that term as vague and ambiguous.  Defendants further object to this interrogatory to the extent it assumes without evidence that the listed individuals sought "access" to "sensitive compartmented information facilities."  Defendants incorporate their objection to definition No. 5.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

State will construe this interrogatory to request the identity of the individual who authorized the listed individuals to obtain access to USAID data security systems and physical access to USAID spaces.

**Response**:  State denies that any unauthorized individual accessed any sensitive compartmented information facility or otherwise accessed classified information.  The decision to invite the listed individuals to access USAID physical spaces and unclassified data systems was made by then-Acting Administrator Jason Gray, consistent with the provisions of Executive Order 14,158.

**INTERROGATORY NO. 5:** Identify the individual(s) who made the decision to give DOGE personnel access to USAID data systems between on or about January 20 and March 31, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Defendants object to the term "DOGE personnel" as vague and ambiguous if it is construed to include individuals who are not or were not at relevant times employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization. Defendants further incorporate their objection to definition No. 5. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

State will construe this interrogatory to request the identity of the individual who authorized any of Steve Davis, Gavin Kliger, Luke Farritor, Noah Peters, or Clayton Cromer to obtain access to USAID data security systems and physical access to USAID spaces.

**Response**: Jason Gray, who was then Acting Administrator of USAID, and Kenneth Jackson, Assistant to the Administrator for Management and Resources, consistent with the provisions of Executive Order 14,158.

**INTERROGATORY NO. 6:** Identify the individual(s) who made the decision to systematically block access to USAID data systems by USAID personnel between on or about January 20 and March 31, 2025, including cutting off access to email and other government computer systems for thousands of USAID employees and personal service contractors

9

("PSCs"), when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object to this interrogatory to the extent it takes as established that all USAID personnel were systematically blocked from access to USAID data systems.

**Response**: State denies that "USAID personnel" were "systematically block[ed from] access to USAID data systems" outside of specific changes to their employment status. Instead, USAID employees and PSCs who were placed on administrative leave, subject to a reduction-in-force, or had their personal service contract terminated would have relevant account access suspended during the term of that action. Such access restrictions were authorized by the individual who authorized USAID to take the underlying employment action, as reflected in the documents previously submitted to the Court. *See, e.g.,* ECF No. 70-1 at 4; ECF No. 70-2 at 2; ECF No. 70-6 at 2; ECF No. 70-7 at 2.

**INTERROGATORY NO. 7:** Identify the individual(s) who made the decision to place USAID Director of Security John Vorhees and USAID Deputy Director Brian McGill on administrative leave in February of 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**:  On or about February 1–2, 2025, Kenneth Jackson, Assistant to the Administrator for Management and Resources, authorized the placement of John Voorhees and Brian McGill on administrative leave.  On February 11, 2025, Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, authorized the issuance of administrative leave notices to John Voorhees and Brian McGill.  The notices were then issued to Mr. Voorhees and Mr. McGill the next day.  The decision was officially memorialized and communicated to those responsible for implementation by email.

**INTERROGATORY NO. 8:** Identify the individual(s) who made the decision to terminate approximately 791 PSCs who were informed that their contracts had been terminated on or about February 2, 2025, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**:  On February 2, 2025, Secretary of State Marco Rubio, who was then also performing the duties and functions of the Administrator of USAID, authorized the termination of approximately 791 Personal Service Contracts in high-income and medium-income countries as defined by the World Bank.  The decision was memorialized and communicated by the documents previously disclosed to the Court.  *See* ECF No. 70-9.

**INTERROGATORY NO. 9:** Identify the individual(s) who made the decision to place

approximately 2,140 USAID employees on administrative leave between on or about February 3-7, 2025, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, made the decision to place approximately 2,140 USAID employees on administrative leave. The decision was made on February 4, 2025, as memorialized and communicated by the documents previously disclosed to the Court. *See* ECF No. 70-8.

**INTERROGATORY NO. 10:** Identify the individual(s) who made the decision to send an email from "USAID Press" to all USAID staff, on or about February 3, 2025, telling them to work remotely for the day, as USAID headquarters would be closed, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, verbally authorized the closure of the USAID building and directed Gavin Kliger to send the described email communication.

**INTERROGATORY NO. 11:** On or about February 4, 2025, an internal communications notice was sent to USAID employees stating that, effective February 7, 2025 at 11:59 P.M., "all USAID direct hire personnel will be placed on administrative leave globally, with the exception of designated personnel responsible for mission-critical functions, core leadership and specially designated programs," affecting approximately 2,104 additional USAID employees. Identify the individual(s) who made this decision to place these employees on administrative leave, when the decision was made, how the decision was officially memorialized, as well as the individual(s) responsible for determining the excepted "designated personnel responsible for mission-critical functions, core leadership, and specially designated programs."

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, made the decision to place the described employees on administrative leave. That decision was memorialized in the documents previously submitted to the Court. *See* ECF No. 70-8. Mr. Marocco was also the individual responsible for determining the personnel who would be excepted from that action.

**INTERROGATORY NO. 12:** Identify who served as USAID Administrator between January 30 and February 2, 2025, the individual(s) who made that decision, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.

**Response**:  On January 30, 2025, President Donald J. Trump designated Secretary of State Marco Rubio Acting Administrator of USAID, pursuant to the Federal Vacancies Reform Act.

**INTERROGATORY NO. 13:** Identify who served as USAID Deputy Administrator between January 30 and February 2, 2025, the individual(s) who made that decision, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.

**Response**:  Prior to the time Peter Marocco performed the duties of USAID Deputy Administrator, the duties of the Deputy Administrator for Management and Resources were performed by Kenneth Jackson.

**INTERROGATORY NO. 14:** Identify all meetings and discussions with government officials (including other Defendants) that Defendant Elon Musk attended or took part in between December 1, 2024 and May 31, 2025 concerning the dismantling, closing[], reorganizing, or restructuring of USAID, including terminating USAID employees or placing them on administrative leave, terminating PSCs, or terminating USAID contacts or grants.

**Objections**:  Defendants incorporate by reference the above objections. Defendants object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for the United States Department of State and Marco Rubio to identify "all meetings and discussions" that "Elon Musk attended or took part in." Defendants cannot comprehensively catalogue every conversation Mr. Musk had with any individual

connected to State or USAID, including every conversation Mr. Musk, then a Senior White House advisor, had with Secretary of State Rubio. Mr. Musk is not and has never been within the control or employ of the parties to whom these requests are directed. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to communications. Defendants further object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, presidential communications privilege or any other applicable privilege. Specifically, Defendants object to this Interrogatory's incorporation of the definition of "identify", which purports to require a "description of the facts and circumstances" of any communication that is subject to a relevant privilege. Defendants further object to the vague and ambiguous undefined term "dismantling," which is unclear in this context. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants also object to the time period of this request, which includes dates prior to Mr. Musk's commencement of government service. Defendants object to the use of the undefined term "Meeting" in a manner incompatible with, and calculating to expand the obligations imposed by, the Government in the Sunshine Act, 5 U.S.C. 552b.

Consistent with the above-stated objections, Defendants will construe this Interrogatory as requesting identification of any meetings or non-privileged communications between Mr. Musk and anyone employed by or detailed to the Department of State "concerning the. . . closing[], reorganizing, or restructuring of USAID, including terminating USAID employees or placing them on administrative leave, terminating PSCs, or terminating USAID contacts or grants" between January 20, 2025 and May 31, 2025.

**Response**: To State's current knowledge, Mr. Musk had several conversations with Secretary of State Rubio, Jeremy Lewin, Michael A. Needham, Counselor of the Department and then Secretary Rubio's Chief of Staff, Tarak Maketcha, and Daniel Joseph Holler, Sr., Chief of Staff of the Department of State, during the time period covered by this request. State also currently understands that Mr. Musk spoke to Jason Gray and Peter Marocco on at least one occasion. State will update this response as further information is developed.

**INTERROGATORY NO. 15:** Identify any DOGE personnel who have been detailed to or otherwise worked at USAID, including providing a general description of their duties and responsibilities at USAID.

**Objections**: Defendants incorporate by reference the above objections. Defendants object to Interrogatory No. 15, as it incorporates the definition of DOGE that incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service." Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization. Defendants further object to Interrogatory No. 15 as vague and ambiguous, as it incorporates the definition of DOGE personnel that refers to any individual who "otherwise works or worked for DOGE." Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization, whether in a paid or unpaid capacity. Defendants also object to the phrase "detailed to or otherwise worked at USAID" as vague and ambiguous.

State will construe that phrase to include any individual who was detailed to or employed by USAID who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

**Response**:  Subject to and without waiving the foregoing objections, State is unaware of any individual who was detailed to or employed by USAID who had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

**INTERROGATORY NO. 16:** Describe the current operations of USAID by bureau, office, division or component, including the total number of employees and PSCs, current contracts and grants, operational computer systems, and other information relevant to whether USAID is performing its Core Functions and other statutorily required activities.

**Objections**: Defendants incorporate by reference the above objections. Defendants further object to this interrogatory as vague and ambiguous to the extent it requests unspecified "other information" which Plaintiffs may deem "relevant," which is unknown to Defendants at this time. Defendants also object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a description of the current operations of every office of USAID, every computer system, and compliance with an unknown number of functions and statutorily required activities, whether or not related to the facts and circumstances alleged in Plaintiffs' Second Amended Complaint. State will construe this Interrogatory as limited to the total number of employees currently employed by USAID and a description of their functions.

**Response**:  USAID currently employs approximately 74 direct-hire employees, in addition to other appointees and contract support staff.  Those personnel support five lines of effort for USAID functions: legal, financial management, human capital, closeout of contracts and grants that are not transferring to State, and remaining general operations, including statutory mandated functions. USAID also continues to fulfill its statutorily mandated functions as an

independent agency until such time as Congress adopts legislation to allow the Secretary of State to transfer those functions to appropriate portions of State.

**INTERROGATORY NO. 17:** Describe any dismantling, closing, reorganizing, or restructuring of USAID, including the closing, downsizing, or combining of any USAID bureau, office, division, or component, and how that information concerning such dismantling, closing, reorganizing, or restructuring was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.  Defendants further object to the vague and ambiguous undefined term "dismantling," which is unclear in this context.

**Response**:  Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

**INTERROGATORY NO. 18:** State USAID's total actual or projected spending for Fiscal Years 2024 (October 1, 2024 through September 30, 2025) and 2025 (October 1, 2025 through September 30, 2026), broken down and itemized by each subordinate bureau, office, division, or component. For each amount of spending, identify the authorizing statutory appropriation.

**Objections**: Defendants incorporate by reference the above objections.  Defendants further object to this interrogatory as overly burdensome and disproportionate to the needs of this case, as it would require detailed accounting of each expenditure by portion of a federal agency and the identification of legal authority for each amount of spending.  Defendants further object

to the undefined term "spending," which is vague, ambiguous, and inconsistent with relevant appropriations laws. Defendants will construe the term to mean "obligation of funds."

**Response**: Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

**INTERROGATORY NO. 19:** Describe the manner(s) that USAID has used or presently uses to ensure that any and all USAID spending for Fiscal Years 2024 or 2025 complied or complies with the relevant statutory appropriations authorizing such spending.

**Objections**: Defendants incorporate by reference the above objections. Defendants further object to the undefined term "spending," which is vague, ambiguous, and inconsistent with relevant appropriations laws. Defendants will construe the term to mean "obligation of funds."

**Response**: Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

Dated: November 12, 2025                    Respectfully submitted,


BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

*/s/ Jacob S. Siler*
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)

19

JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: jacob.s.siler@usdoj.gov

*Attorneys for Defendants*

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing interrogatory responses of the United States Department of State and Marco Rubio to Plaintiffs' First Set of Interrogatories, dated October 7, 2025, are true and correct, to the best of my knowledge based solely on information that was made known to me in the course of my official duties.

Dated: November 12, 2025

/s/ _____