**No. 26-1160**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

———————————

IN RE ELON MUSK, in his official capacity; UNITED STATES DOGE
SERVICE; DEPARTMENT OF GOVERNMENT EFFICIENCY; UNITED
STATES DEPARTMENT OF STATE; UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT; MARCO RUBIO, in his official
capacity; PETER MAROCCO, in his official capacity; JEREMY LEWIN, in
his official capacity; KENNETH JACKSON, in his official capacity; and
AMY GLEASON, in her official capacity,

Petitioners.

———————————

**REPLY IN SUPPORT OF
PETITION FOR A WRIT OF MANDAMUS**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant
  Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
CYNTHIA BARMORE
  *Attorneys, Appellate Staff
  Civil Division, Room 7529
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................. 1

ARGUMENT.......................................................................................... 3

    A.    Extraordinary Circumstances Are Required To Compel
          The Depositions Of Musk, Gleason, Marocco, And Lewin. ........ 3

    B.    There Are No Extraordinary Circumstances Here. .................. 10

    C.    The Remaining Mandamus Factors Are Satisfied. ...................17

CONCLUSION....................................................................................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## INTRODUCTION AND SUMMARY

Plaintiffs identify no colorable basis to order the depositions of Elon Musk, Amy Gleason, Peter Marocco, and Jeremy Lewin, each a current or former high-ranking Executive Branch official. Plaintiffs acknowledge (at 10-11) the robust body of appellate precedent establishing that courts will not compel the deposition of high-ranking officials absent "extraordinary circumstances." Plaintiffs primarily argue that Musk, Gleason, Marocco, and Lewin do not qualify for that doctrine's protections. But plaintiffs make no effort to distinguish the wealth of precedent to the contrary. In fact, as our petition explained, courts regularly apply the doctrine to senior White House and agency officials like these, recognizing that close advisors to the President and deputy agency heads are protected from deposition testimony absent extraordinary circumstances.

Plaintiffs' response to the petition is particularly striking for what it does not include. Plaintiffs do not identify any instance in which any court of appeals has allowed the compelled deposition of a Senior Advisor to the President like Musk, either current or former. Likewise, they point to no appellate decision allowing the compelled deposition of a White House component head like Gleason. Nor do plaintiffs cite any case in which a court of appeals authorized depositions of high-ranking agency officials in

circumstances in which so many other avenues for discovery—including written discovery—remained open. *See In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (granting mandamus to block the deposition of the EPA Administrator where there were "alternative" methods to obtain the desired information).

Plaintiffs simply cannot demonstrate the "extraordinary circumstances" necessary to subject these officials to compelled depositions. Plaintiffs devote barely three paragraphs (at 14-16) of their twenty-page opposition to explaining why they believe that standard is satisfied here. Nowhere in those paragraphs do they explain what specific facts they need to litigate their constitutional claims, let alone why these officials uniquely possess those facts or why they must conduct these depositions instead of availing themselves of the alternative means available to seek such information.

Plaintiffs' position is particularly weak in light of the fundamental mismatch between their only cognizable injuries and their sweeping legal claims. *See* Pet. 33-37. Plaintiffs contend (at 15) that the "key issue in the case" is the involvement of Musk and others "in shutting down USAID, including by closing its headquarters and removing its website." But as our petition explained (at 34-35), it is plainly not necessary to resolve those

2

questions in this case.  The district court held that plaintiffs have Article III standing only because of their employment-related harms—not because of anything related to the headquarters closure or the website.  Plaintiffs cannot demonstrate the sort of "extraordinary circumstances" needed to depose high-ranking Executive Branch officials in service of legal theories they lack standing to pursue.

As the government has noted, Lewin's deposition is scheduled for Thursday, March 5, and the government respectfully requests relief as soon as practicable.  *See* Doc. 9, Rule 28(j) Letter (Feb. 20, 2026).

## ARGUMENT

### A.  Extraordinary Circumstances Are Required To Compel The Depositions Of Musk, Gleason, Marocco, And Lewin.

As our petition explained, high-ranking Executive Branch officials like Musk, Gleason, Marocco, and Lewin may not be subject to compelled depositions absent "extraordinary circumstances."  Pet. 16-21.  Plaintiffs purport to agree; they make no effort (at 9-10) to defend the district court's erroneous conclusion that the doctrine applies only to deposition testimony about mental processes.  *See* Pet. 19-21.  There is thus no dispute that the district court erred in declaring that "[h]ere, under Fourth Circuit precedent, the Motion for a Protective Order fails in part because Plaintiffs

do not seek deposition testimony on the mental processes used in, and the reasons for, agency decisions."  Op. 4-5.

Plaintiffs instead insist (at 9-14) that Musk, Gleason, Marocco, and Lewin are not high-ranking officials entitled to the protections of this doctrine at all.  Put differently, plaintiffs contend that they are entitled to depose these current and former White House and senior agency officials in the same manner as any other person under Rule 30.  *See* Fed. R. Civ. P. 30(a) (in general, "[a] party may, by oral questions, depose any person, including a party, without leave of court").  That contention cannot be squared with the decisions of this Court and other courts of appeals.

**1.**  Start with Musk and Gleason, senior White House officials. Plaintiffs argue (at 10) that the government cited "circuit cases" that "involve deponents serving in very different roles with very different responsibilities," but those cases are entirely analogous.  As noted, the Fifth Circuit blocked the deposition of a former White House Press Secretary, a decision that plaintiffs make no attempt to distinguish.  Order, *In re Murthy*, No. 22-30697 (5th Cir. Jan. 5, 2023).  Plaintiffs also ignore highly relevant examples of district court cases blocking the depositions of similar White House officials.  *See Alexander v. FBI*, 186 F.R.D. 1, 3-4 (D.D.C. 1998) (Assistant to the President); *United States v. Newman*, 531 F. Supp.

4

3d 181, 190-91 (D.D.C. 2021) (former Deputy Counsel and Deputy Assistant to the President); Pet. 22.  By contrast, plaintiffs do not identify any court of appeals decision *approving* the compelled deposition of a senior Presidential advisor or the head of a White House component.

Plaintiffs assert (at 14) that it is "unexplained and not credible" that testimony by Musk and Gleason would "intrude on the President's performance of his constitutional duties."  That is a puzzling assertion from plaintiffs, who have otherwise asserted in this litigation that Musk exercised too much power on behalf of the President.  *See* Second Amended Complaint, D. Ct. Doc. 135 at 2, 14-15 (May 30, 2025) (describing Musk as exercising "extraordinary—and seemingly unprecedented—authority" as the "de facto head of DOGE" who made important decisions "of the type that must be performed by a duly appointed officer," and alleging he "reports directly to President Trump and often acts unilaterally in directing DOGE operations").  Plaintiffs cannot have it both ways.  In all events, it should be self-evident that the compelled deposition of a Senior Advisor to the President and the head of a White House component implicates the separation of powers.  The Supreme Court has repeatedly emphasized the importance of respecting "the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its

5

communications." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004).

Plaintiffs offer (at 12) a handful of reasons to discount Musk's role, but none suffices. They assert that Musk is not entitled to protection because his role as Senior Advisor to the President involved "amorphous" responsibilities. The same could be said of almost any senior White House advisor with a diverse portfolio. That Musk had a wide-ranging advisory role in the White House is a reason to be even *more* cautious about compelling his deposition. Plaintiffs also note (at 12) that Musk was unpaid and classified as a "special government employee," a classification "shared by thousands of federal government employees." But Musk is entitled to the doctrine's protections because he was a Senior Advisor to the President, not because of his employment classification.

Plaintiffs similarly fail (at 12) to demonstrate that Gleason is not a high-ranking official. They assert that she, as Acting Administrator of USDS, is a "non-confirmed official[]" serving in a "second-tier position[]." Opp. 12. Presidential advisors are typically not Senate-confirmed officers, however, and it is unclear what plaintiffs mean by "second-tier." The President's Chief of Staff and the White House Counsel are not Senate-confirmed and are second-tier to the President, but presumably plaintiffs

would not contend that either could be freely deposed in civil litigation. Indeed, plaintiffs seem to accept decisions from the Fifth and D.C. Circuits holding that a Deputy Assistant to the President and the Vice President's Chief of Staff were entitled to protection from compelled deposition, *see* Opp. 10 n.1, 11 n.3, yet both of those officials were non-confirmed and "second-tier" in some sense.

**2.** Turning to Marocco and Lewin, plaintiffs emphasize (at 12) that neither is "a Senate-confirmed official, elected official, a Vice President's Chief of Staff, or appointed individual owed absolute discretion," but the doctrine's protections extend well beyond those specific types of officials. *See* Pet. 23 (citing cases). While plaintiffs dismiss Marocco and Lewin as "second-tier" officials, courts regularly recognize that an agency's second-in-command is entitled to the doctrine's protections. *See, e.g.*, *In re United States* (*Holder*), 197 F.3d 310, 311 (8th Cir. 1999) (Deputy Attorney General); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013) (former Deputy Mayor); Pet. 23-24.

Plaintiffs cite no case compelling the deposition of a deputy agency head over the government's objection. Instead, they rely on cases involving lower agency officials—many of whom were offered voluntarily as witnesses by the Executive Branch. *See, e.g.*, *In re United States* (*Jackson*), 624 F.3d

1368, 1373 (11th Cir. 2010) (permitting the government to substitute the appearance of the Assistant Administrator for Water of the EPA in lieu of the Administrator); *In re Cheney*, 544 F.3d at 314 (similar, permitting testimony by Vice President's Deputy Chief of Staff); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704-05 (9th Cir. 2022) (noting previous testimony by Undersecretaries of Education); *In re Dep't of Com.*, 586 U.S. 956, 957 (2018) (declining to block testimony by the Acting Assistant Attorney General); *see also In re Clinton*, 973 F.3d 106, 111 (D.C. Cir. 2020) (declining to reach the merits of argument by former Chief of Staff to Secretary of State who had alternative means to seek relief).

Plaintiffs also emphasize (at 13-14) that Lewin and Marocco (as well as Musk) are no longer in their former roles, but they ignore the wealth of precedent holding that former high-ranking Executive Branch officials remain protected from compelled depositions about their actions in their government roles. As our petition explained, the concerns animating the rule "hardly become[] inapplicable upon an official's departure" from office. Pet. 26 (quoting *U.S. Dep't of Educ.*, 25 F.4th at 705). Senior officials should not be required to make important decisions in anticipation that their decisions will become topics for compelled depositions as soon as their terms in office conclude. Courts therefore have blocked the compelled

depositions of a former Secretary of Education, a former White House Press Secretary, a former Deputy Mayor, and a former Secretary of State. *Id*. For similar reasons, plaintiffs err in asserting (at 14) that Marocco and Lewin's testimony cannot "burden the separation of powers" because their former agency "effectively no longer exists." The reduction of an agency's activities is as important as any other topic about which senior officials must not be compelled to testify. Officials working to effectuate changes to an agency's structure should not have to carry out such tasks knowing that orders to compel their deposition testimony await the completion of their task. *See Jackson*, 624 F.3d at 1374 (explaining the "threat to the separation of powers" stemming from the fact that "the appearance of the executive official must be, in the end, compelled by an order of the judiciary"). Plaintiffs make no attempt to reconcile their position with such principles.

Finally, plaintiffs' contrary authority is inapposite. They cite a decision upholding a congressional subpoena for financial records from President Trump between his terms in office, but that court agreed that "the heightened separation-of-powers scrutiny prescribed by the Supreme Court continues to govern in the unique circumstances of this case even though he is no longer the sitting President." *Trump v. Mazars USA, LLP*, 39 F.4th 774, 779 (D.C. Cir. 2022). Plaintiffs also cite a dissenting opinion in a Ninth

9

Circuit case, but they ignore that the majority granted mandamus to block the compelled deposition of a former Secretary of Education.  *See In re U.S. Dep't of Educ.*, 25 F.4th at 705.  And plaintiffs overstate the relevance of an unpublished, one-paragraph order declining to block the deposition of then-former President Trump.  *See In re Garland*, 2023 WL 5662104 (D.C. Cir. 2023) (per curiam) (unpublished).  That decision has minimal reasoning and no precedential value, was not reviewed by the Supreme Court, and in all events concerned an employment claim involving allegations of personal retaliation—nothing like the sort of agency actions challenged here.

### B.   There Are No Extraordinary Circumstances Here.

Plaintiffs also fail to demonstrate extraordinary circumstances that could possibly justify these depositions.  *See* Pet. 28-37.  They argue (at 14) that they hope to explore "the timing, role, and involvement of Defendants Musk, Marocco, and Lewin in shutting down USAID," emphasizing the alleged first-hand knowledge of these witnesses.  Critically, however, plaintiffs fail to show (1) that those facts are only available from these witnesses through live deposition testimony; or (2) that those facts are necessary (let alone essential) to their legal claims.

10

**1.** Plaintiffs repeatedly emphasize (at, *e.g.*, 15) the alleged "unique 'first-hand knowledge'" that they believe the proposed deponents may possess. As our mandamus petition explained (at 31), however, personal knowledge or involvement in the subject matter of litigation would not demonstrate extraordinary circumstances. Plaintiffs must show that deposition testimony by these officials is "essential" to their claims, including that the information is not available elsewhere. *In re U.S. Dep't of Educ.*, 25 F.4th at 703.

Plaintiffs cite no authority holding that mere personal knowledge can justify a finding of extraordinary circumstances to depose a senior Executive Branch official. While plaintiffs argue that first-hand knowledge may be relevant in some cases, the case they cite *upheld* a protective order to prevent the deposition of the Mayor of Boston. *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007). That court also noted that, "even in such cases" where deposition of such officials is permitted, it must be "shown that other persons cannot provide the necessary information." *Id.* at 423.

More broadly, cases emphasizing the relevance of first-hand knowledge typically involve depositions of senior corporate executives. For example, in *Bogan*, the First Circuit highlighted the potential relevance of "first-hand knowledge" by citing a case involving a deposition of the Vice

President of General Motors.  *See Bogan*, 489 F.3d at 423 (citing *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991)).  Whatever the proper standard to subject officers of a private corporation to deposition testimony, more is necessary to justify the compelled deposition of a high-ranking Executive Branch official, which implicates the constitutional separation of powers.

**2.**  Relatedly, plaintiffs have not shown (at 15-16) that compelled depositions of Musk, Gleason, Marocco, and Lewin are necessary to obtain essential information.  Even if plaintiffs were correct that these officials may have "first-hand knowledge" and "insight," Opp. 15-16, the relevant question is not just whether they have essential information, but whether *only* they have that information.  Plaintiffs offer no basis to conclude that these are the only officials who could speak to "the timing, role, and involvement" of Musk, Marocco, and Lewin at USAID, Opp. 14, particularly when plaintiffs have not yet exhausted other avenues for discovery.

Plaintiffs also err (at 15-16) in arguing that deposition testimony is necessary because previous attempts at written discovery have been inadequate in their view.  They assert (at 15) that the government has "refused to fully answer interrogatory questions on the relevant topics." But like the district court, plaintiffs have not shown that the government's

12

responses were inadequate, nor have they explained why such routine

discovery disputes would justify the deposition of senior Executive Branch

officials.  Any such past deficiencies would not absolve plaintiffs of the need

to exhaust alternatives before turning to live deposition testimony.  Pet. 32.

If plaintiffs are unsatisfied with previous written responses, plaintiffs have

ample tools in the federal rules to seek supplemental or more complete

answers, or they can ask questions of other witnesses.

Plaintiffs also complain (at 15) that the government has not

adequately responded to their proposal for stipulations.  They assert that,

"[a]fter initially agreeing to work toward stipulations months ago, the

government has not provided proposed counter-stipulations to the initial

draft provided by plaintiffs."  Opp. 15.  In fact, government counsel asked

plaintiffs whether, among other things, there were "facts we could stipulate

to avoid discovery or at least depositions," but plaintiffs indicated that they

"cannot agree to forgo depositions at this time," and suggested that any

agreement on stipulations would result only in "narrow[ing] the deposition

and written discovery questions."  *See* Email Correspondence Between

Jacob S. Siler and Beth Stevens (Nov. 3, 2025) (attached as Exhibit A).

Having thus insisted on pressing ahead with depositions of senior

Executive Branch officials regardless of any stipulations, plaintiffs cannot

now complain that stipulations might have avoided the need for mandamus.

Finally, plaintiffs repeat (at 16) several of the district court's errors. Plaintiffs urge that only oral testimony can provide evidence about oral orders, but they offer no response to the government's observation that this is a non sequitur. *See* Pet. 31-32. Answers to questions about alleged oral orders surely can be written down. Plaintiffs also assert that the government has not "identified any lower-ranking officials who were present" when certain alleged decisions were made, but the government has made numerous other officials available for deposition, *see* Pet. 11-12, and plaintiffs must exhaust those alternatives before declaring them insufficient.

**3.** More fundamentally, plaintiffs have not identified any facts that the proposed deponents could provide that are actually necessary to the adjudication of the claims plaintiffs have standing to assert. *See* Pet. 33-37. Plaintiffs describe (at 14) a need for information about the proposed deponents' "timing, role, and involvement" in certain actions at USAID, including the closure of the agency's headquarters and website. But plaintiffs—who the district court held possess Article III standing only

14

because of their employment-related harms, D. Ct. Doc. 150 at 32-34—lack standing to challenge those actions, which did not injure them.

Plaintiffs offer no meaningful response. They assert (at 18) that "there is no requirement" that depositions "must bear directly on their theory of injury." The problem, however, is that the headquarters and website decisions are not at all relevant to any claims that plaintiffs have standing to bring. And plaintiffs have not identified any other specific information that they seek to obtain from these witnesses. Plaintiffs' suggestion that depositions are "essential" despite seeking information entirely disconnected from any government decision alleged to have harmed them cannot be reconciled with the Supreme Court's repeated warning that "standing is not dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted). Deposition testimony cannot be "essential" to plaintiffs' legal claims, *In re U.S. Dep't of Educ.*, 25 F.4th at 703, when it does not address actions that plaintiffs have standing to challenge.

Plaintiffs insist (at 17) that defects in their Article III standing (as well as subject-matter jurisdiction and the merits) are "not properly before this Court." But that is wrong: those defects demonstrate the absence of extraordinary circumstances warranting these depositions. Plaintiffs have

15

no compelling need for unusual discovery into actions that did not injure them. *See* Pet. 34-36. Failure to "show an entitlement to the relief sought in the case" is an eminently reasonable basis to block "discovery from high government officials." *Holder*, 197 F.3d at 314.

Plaintiffs point to this Court's holding that a party usually cannot obtain mandamus relief from a district court's order denying permission to pursue an interlocutory appeal under 28 U.S.C. § 1292(b). *See In re Trump*, 958 F.3d 274, 283 (4th Cir. 2020), *vacated*, 141 S. Ct. 1262 (2021). But the government has not sought mandamus relief from the district court's order denying our motion for interlocutory appeal. That motion sought permission to appeal the district court's denial of our motion to dismiss. This mandamus petition seeks review of the district court's order authorizing the compelled deposition of current and former White House and senior agency officials. As plaintiffs agree (at 14), those depositions cannot go forward absent extraordinary circumstances. The fatal legal defects in plaintiffs' claims—including the fundamental mismatch between plaintiffs' injuries and the sweeping legal theories they want to litigate— provide an independent and sufficient basis to conclude that plaintiffs cannot satisfy that demanding standard.

16

Plaintiffs likewise err in relying on *In re Executive Office of President*, 215 F.3d 20 (D.C. Cir. 2000) (per curiam).  There, the court recognized that, "[i]n the normal course," "mandamus is not available to review a discovery order," particularly where that review would provide "a vehicle for interlocutory review of the underlying merits of the lawsuit."  *Id.* at 23.  The court also recognized, however, that mandamus is appropriate in certain types of cases, such as to review an "order that diplomats submit to depositions."  *Id.*  The court did not suggest that where mandamus review *is* available, as here, the underlying merits of the complaint are somehow off-limits for purposes of the "extraordinary circumstances" inquiry.

## C.    The Remaining Mandamus Factors Are Satisfied.

The remaining two mandamus factors—whether the issuance of the writ is appropriate under the circumstances, and whether the petitioner has no adequate means to obtain relief—are also satisfied.  This Court has made clear that mandamus is appropriate when a court orders depositions of high-ranking officials.  *See In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015).

Plaintiffs offer no basis to conclude otherwise.  They argue (at 19) that the government has alternative means to limit the scope of testimony, and that the government "fails to explain why these ordinary mechanisms"

17

would be inadequate.  But the government explained at length why limiting the scope of testimony would not provide adequate alternative relief.  *See* Pet. 28.  As we explained, the question is not merely one of privilege, but of the constitutional autonomy and independence of the Executive Branch and of the burden on senior officials.  For this reason, for example, the Eleventh Circuit granted mandamus to quash an order directing the FDA Commissioner "to be available for thirty minutes" by telephone.  *In re United States (Kessler)*, 985 F.2d 510, 511-13 (11th Cir. 1993) (per curiam).  Plaintiffs offer no response to these arguments.

Plaintiffs also note (at 19) that the government has not moved for a protective order with respect to Gleason, but as discussed, that is because briefing on the instant protective order was complete before plaintiffs requested her deposition.  The government asked the district court whether separate motions practice was needed for Gleason, and after stating it "suppose[d]" the government "could file" another motion, the court then proceeded to indicate that its ruling as to Musk, Marocco, and Lewin was "law of the case" and to instruct the parties to keep "within the last ruling." Tr. of Proceedings at 72:17-73:5 (Feb. 5, 2026); *see* Pet. 14.  It was unnecessary to file a supplemental motion for a protective order in the face of that instruction.

18

## CONCLUSION

The petition for a writ of mandamus should be granted.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
  *Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON

 *s/ Cynthia Barmore*
CYNTHIA BARMORE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *Cynthia.A.Barmore@usdoj.gov*

February 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this document complies with the requirements of Federal Rule of Appellate Procedure 21(d) and 32(c) because it has been prepared in 14-point Georgia, a proportionally spaced font, and that it contains 3,790 words, according to Microsoft Word.

*s/ Cynthia Barmore*
Cynthia Barmore

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.  I certify that the participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, except for the following, who will be served via mail:

Norman L. Eisen
Democracy Defenders Fund
600 Pennsylvania Avenue SE
Washington, DC 20003

Richard M. Heimann
Lieff, Cabraser, Heimann & Bernstein
275 Battery Street
San Francisco, CA 94111-0000

Mimi Marziani
Marziani, Stevens & Gonzalez PLLC
1533 Austin Highway
San Antonio, TX 78218

Rebecca Stevens
Marziani, Stevens & Gonzalez PLLC
1533 Austin Highway
San Antonio, TX 78218

Judge Theodore D. Chuang
U.S. District Court, District of Maryland
6500 Cherrywood Lane, Suite 245
Greenbelt, MD 20770

*s/ Cynthia Barmore*
Cynthia Barmore

**ADDENDUM**

**EXHIBIT A**

**Barmore, Cynthia A. (CIV)**

| | |
|---|---|
| **From:** | Beth Stevens <bstevens@msgpllc.com> |
| **Sent:** | Monday, November 3, 2025 4:51 PM |
| **To:** | Siler, Jacob S. (CIV) |
| **Cc:** | Lynch, Christopher M. (CIV); Wen, James J. (CIV); Hall, Christopher (CIV); Hartlieb, Garry (USAVAE); Mimi Marziani; Tianna Mays; Joaquin Gonzalez; andrew@statedemocracydefenders.org; Norman@statedemocracydefenders.org; Heimann, Richard M.; Rubin, Nicole M. |
| **Subject:** | Re: [EXTERNAL] Depositions |

Hi Jake,

Thank you for your response.

We will serve Mr. Vorhees and Mr. McGill's subpoenas.

We're happy to continue discussions around possible stipulations (and review any redlines you have), but we cannot agree to forgo depositions at this time. If we are able to come to agreed-upon stipulations, we will be able to narrow the deposition and written discovery questions accordingly.

We are fine with agreeing to a week extension of the discovery deadline if you agree:
(1) to a two-day extension for our expert witness disclosure/report and
(2) will agree that the deposition dates we have sent in the previous email (and copied below for ease of reference) work for your schedules and, if any date won't work because all the people on your team are unavailable, provide an alternate date that is within a week of the one currently set.
***Please let us know if y'all agree to this so that we can plan accordingly.***

**Schedule:**
Monday, November 17 at 9:00 am: John Vorhees
Tuesday, November 18 at 9:00 am: Brian McGill
Wednesday, November 19 at 9:00 am: Gavin Kliger
Thursday, November 20 at 9:00 am: Luke Farritor
Friday, November 21 at 9:00 am: USAID 30(b)(6)
Friday, November 21 at 1:00 pm: State Department 30(b)(6)

Monday, December 8 at 9:00 am: Jeremy Lewin
Wednesday, December 10 at 9:00 am: Peter Marocco
Friday, December 12 at 9:00 am: Elon Musk

Thank you,

Beth

On Mon, Nov 3, 2025 at 12:59 PM Siler, Jacob S. (CIV) <Jacob.S.Siler@usdoj.gov> wrote:

> Beth,

We received your email. On the service question, for the reasons previously discussed we do not represent any of these individuals in their personal capacities and cannot accept service for anyone other than Messrs. Lewin and Marocco. The other listed individuals are not employees of the Defendant agencies. Messrs. Vorhees and McGill, moreover, appear to be members of the certified class, which is a further reason we cannot accept service of a legal document on their behalf in this matter. Can you please confirm that you intend to serve those subpoenas?

Please note that, by discussing service, we do not waive any other possible objection to these subpoenas, which will be made within the timelines set by the Federal Rules.

Regarding the stipulations, we are open to stipulating to the authenticity of relevant documents and believe it is likely we could work out specific language as to the other proposals. We are proposing, however, that we could agree to facts you hope to develop in depositions. Would you agree to bypass the planned depositions if we could stipulate to some version of these facts? Are there other facts we could stipulate to avoid discovery or at least depositions?

Finally, while we are planning to provide a response to your written discovery requests, we request pursuant to the District of Maryland's Discovery Guideline No. 9 that the parties agree to a one-week extension of our time to respond. While we have attempted to meet the default deadlines, we have been hampered in our ability to prepare responses by the ongoing lapse in appropriations, resultant furloughs of certain individuals, as well as counsel's need to respond to emergency court deadlines in other litigation.

Best,

Jake

Jacob S. Siler

Trial Attorney
Federal Programs Branch

U.S. Department of Justice, Civil Division

1100 L Street, NW

Washington, DC 20005

(202) 353-4556

---

**From:** Beth Stevens <bstevens@msgpllc.com>
**Sent:** Friday, October 31, 2025 3:28 PM
**To:** Siler, Jacob S. (CIV) <Jacob.S.Siler@usdoj.gov>; Lynch, Christopher M. (CIV) <Christopher.M.Lynch@usdoj.gov>
**Cc:** Wen, James J. (CIV) <James.J.Wen@usdoj.gov>; Hall, Christopher (CIV) <Christopher.Hall@usdoj.gov>; Hartlieb, Garry (USAVAE) <Garry.Hartlieb@usdoj.gov>; Mimi Marziani <mmarziani@msgpllc.com>; Tianna Mays <tianna@statedemocracydefenders.org>; Joaquin Gonzalez <jgonzalez@msgpllc.com>; andrew@statedemocracydefenders.org; Norman@statedemocracydefenders.org; Heimann, Richard M. <rheimann@lchb.com>; Rubin, Nicole M. <nrubin@lchb.com>
**Subject:** [EXTERNAL] Depositions

Good afternoon, Chris and Jake,

Please see attached subpoenas for depositions in this case. For ease of reference, I'm including below the scheduled dates/times of each deposition. We understand that Mr. McGill and Mr. Vorhees are still working in the federal government, just not at USAID or the State Department. Please confirm that you accept service on their behalf.

**Schedule:**

Monday, November 17 at 9:00 am: John Vorhees

Tuesday, November 18 at 9:00 am: Brian McGill

Wednesday, November 19 at 9:00 am: Gavin Kliger

Thursday, November 20 at 9:00 am: Luke Farritor

Friday, November 21 at 9:00 am: USAID 30(b)(6)

Friday, November 21 at 1:00 pm: State Department 30(b)(6)

Monday, December 8 at 9:00 am: Jeremy Lewin

Wednesday, December 10 at 9:00 am: Peter Marocco

Friday, December 12 at 9:00 am: Elon Musk


Thank you,

Beth

--

**Beth Stevens**

she/her/hers

Founding Partner, MS&G PLLC

[bstevens@msgpllc.com](mailto:bstevens@msgpllc.com)

(361)437-9081

**CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED & ATTORNEY WORK PRODUCT**

Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law. If you are not an intended recipient of this email, do not read, copy, use, forward or disclose the email or any of its attachments to others. Instead, immediately notify the sender by replying to this email and then delete it from your system. We strictly prohibit any unauthorized disclosure, copying, distribution or use of emails or attachments sent by us.

--
**Beth Stevens**
she/her/hers
Founding Partner, MS&G PLLC
[bstevens@msgpllc.com](mailto:bstevens@msgpllc.com)
(361)437-9081



**CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED & ATTORNEY WORK PRODUCT**
Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law. If you are not an intended recipient of this email, do not read, copy, use, forward or disclose the email or any of its attachments to others. Instead, immediately notify the sender by replying to this email and then delete it from your system. We strictly prohibit any unauthorized disclosure, copying, distribution or use of emails or attachments sent by us.