FILED: March 4, 2026
AMENDED: March 5, 2026

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 26-1160
(8:25-cv-00462-TDC)

In re: ELON MUSK, in his official capacity; UNITED STATES DOGE SERVICE; DEPARTMENT OF GOVERNMENT EFFICIENCY; UNITED STATES DEPARTMENT OF STATE; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT; MARCO RUBIO, in his official capacity; PETER MAROCCO, in his official capacity; JEREMY LEWIN, in his official capacity; KENNETH JACKSON, in his official capacity; AMY GLEASON, in her official capacity,

          Petitioners.

AMENDED ORDER

QUATTLEBAUM, Circuit Judge:

Before us is a petition for writ of mandamus filed by Elon Musk, United States DOGE Service, Department of Government Efficiency, United States Department of State, United States Agency for International Development (USAID), Marco Rubio, Peter Marocco, Jeremy Lewin, Kenneth Jackson and Amy Gleason. At issue is the district court's order denying petitioners' motion for a protective order to prevent the depositions of Musk, Marocco and Lewin.[1]

---

[1] At a status conference after the denial of the motion, petitioners sought clarification of whether the order also covered Gleason, who plaintiffs also sought to depose, noting her

1

Plaintiffs in this case are former USAID employees and contractors who seek declaratory and injunctive relief against petitioners, alleging their actions pertaining to USAID violated the Constitution's Appointments Clause and separation of powers principles.[2] While discovery was ongoing, petitioners moved for a protective order to prevent depositions of Musk, Marocco and Lewin, noting that "longstanding limitations on deposing high-level Executive Branch personnel requires Plaintiffs to show exceptional circumstances exist before the depositions occur." Motion for Protective Order, *Does v. Musk*, 8:25-cv-00462-TDC (D. Md. Nov. 21, 2025), ECF No. 189-1 at 1.

On February 4, 2026, the district court denied the protective order. Memorandum Order, *Does v. Musk*, 8:25-cv-00462-TDC (D. Md. Feb. 4, 2026), ECF No. 200. Although the district court expressed skepticism, it assumed that Musk, Marocco and Lewin were high-ranking government officials and found that the testimony plaintiffs sought was not about "mental processes used in, and the reasons for, agency decisions." *Id*. at 4–5. The court also held that even if the limitation on deposing high-ranking officials extended beyond those officials' mental processes, plaintiffs had shown that extraordinary circumstances merited Musk, Marocco and Lewin's depositions anyway. *See id*. at 5–8.

---

deposition would implicate similar issues as Musk, Marocco and Lewin. ECF 3 at 72. The court said it would consider a motion if it was filed pertaining to Gleason, but that petitioners should "work within the law of the case . . . ." *Id*. We decline to address whether Gleason may be deposed given the absence of any ruling on a motion for a protective order as to her at this time.

[2] More detailed facts are set forth in this court's earlier order granting petitioners' motion for a stay pending appeal. *See Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025).

On extraordinary circumstances, the district court pointed out that there is a specific need for testimony about the identity of decisionmakers and the timing of decisions and that Musk, Marocco and Lewin have firsthand information about those matters not otherwise obtainable from other sources. *Id*. at 6–7. In determining that the information was not available from other sources, the district court explained that petitioners had not responded adequately, or at all, to written discovery requests. *Id*. at 7–8. Petitioners then filed a petition for writ of mandamus in this court seeking relief from the district court's denial of the protective order. ECF 2.

Mandamus relief is a drastic and extraordinary remedy reserved for extraordinary cases. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). The party seeking mandamus must show a clear and indisputable right to the relief sought and that there are no other means of obtaining relief. *See id*. at 380–81. And the court must, in its discretion, "be satisfied that the writ is appropriate under the circumstances." *Id*. at 381.

To depose Musk, Marocco and Lewin, as high-ranking government officials, plaintiffs must show extraordinary circumstances. *See Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991); *In re McCarthy*, 636 F. App'x 142 (4th Cir. 2015).[3] That's

---

[3] *Franklin* and *McCarthy* considered whether a government decisionmaker, in extraordinary circumstances, could be deposed specifically about their mental processes. But those decisions did not address the question of whether a party seeking to depose high-ranking officials may be deposed on issues that don't pertain to their mental processes without showing extraordinary circumstances. In our view, extraordinary circumstances must still be shown. "Nearly all courts require that a party demonstrate exceptional circumstances justifying the deposition of a high-ranking government official, generally that the official has firsthand information relevant and material to the claim, which cannot be reasonably obtained from another source or other modes of discovery." *See* Fern Kletter,

3

because, among other reasons, doing so implicates separation of powers concerns. *See In re U.S.*, 985 F.2d at 513 (holding that compelling decisionmaker testimony "would have serious repercussions for the relationship between two coequal branches of government"). We conclude that to show such extraordinary circumstances, plaintiffs must show that the high-ranking officials have firsthand information that is relevant and material to plaintiffs' claims and that cannot be reasonably obtained from other sources or modes of discovery.

The district court determined that plaintiffs met their burden of showing of extraordinary circumstances by establishing that there is "no alternative" for plaintiffs to obtain the information sought other than the depositions. *McCarthy*, 636 F. App'x at 144. But the record does not support that finding. The fact that plaintiffs may need the information and that Musk, Marocco and Lewin may have firsthand information about the identity of decisionmakers and the timing of decisions is not, by itself, extraordinary. If it were, the limitation on deposing high-ranking government officials would be no limit at

---

*Deposition of High-Ranking Government Officials*, 15 A.L.R. Fed. 3d Art. 5 (2016); *see also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st. Cir. 2007) ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated. However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information." (citations omitted)); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("[C]abinet secretaries made be deposed under extraordinary circumstances."); *In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1259 (10th Cir. 2022) ("Nearly every circuit to have addressed the question . . . has adopted some form of an 'extraordinary circumstances' test, in which parties must meet a high bar to depose high-ranking officials."); *In re U.S.*, 624 F.3d 1368, 1372 (11th Cir. 2010) ("We must review the record to determine whether it supports a finding of extraordinary circumstances or a 'special need' for compelling the appearance of a high-ranking officer in a judicial proceeding." (quoting *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993))); *In re U.S.*, 542 F. App'x 944, 947 (Fed. Cir. 2013) ("[M]andamus should issue to prevent such a deposition because Chairman Bernanke is a highly ranked government official and [plaintiff] has not shown extraordinary circumstances.").

all. *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere.").

And as for the district court's statement that petitioners had not responded adequately, or at all, to written discovery requests, nothing in the district court's order, nor in our review of the record, indicates that plaintiffs' only alternative is to depose Musk, Marocco and Lewin. First, plaintiffs do not dispute petitioners' claim that plaintiffs have deposed four witnesses but have not yet deposed other lower-ranking officials that they sought. Nor do they dispute petitioners' claim that plaintiffs have not taken depositions under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Deposing high-ranking officials is a measure of last, not first, resort.

Second, even if petitioners' discovery responses are inadequate—a decision we do not address here—the Federal Rules of Civil Procedure contain remedies for inadequacies. For example, they permit motions to compel appropriate responses and sanctions for noncompliance. *See* Fed. R. Civ. P. 37.

In sum, the district court abused its discretion in holding that plaintiffs have no alternative to deposing Musk, Marocco and Lewin when the options available under the Federal Rules of Civil Procedure have not been pursued. Said differently, at least at this

juncture, plaintiffs have not shown the extraordinary where they have not pursued the ordinary.[4]

For these reasons, we grant the petition for mandamus relief and direct that the district court grant petitioners' motion for a protective order at this time. But our decision does not mean that the depositions of Musk, Marocco and Lewin are barred for the remainder of these proceedings. It just means that plaintiffs have not shown extraordinary circumstances based on the record before us.

Entered at the direction of Judge Quattlebaum with the concurrence of Judge Niemeyer. Judge Gregory filed a dissenting opinion.

                                                                       For the Court

                                                                       /s/ Nwamaka Anowi, Clerk

---

[4] In citing these reasons, that Musk, Marocco and Lewin have the information plaintiffs need and that petitioners' discovery responses are lacking, our decision should not be construed to mean that these are the only considerations for assessing the extraordinary circumstances requirement. But since these are the points the district court relied on, we address them.

GREGORY, Circuit Judge, dissenting:

I respectfully dissent from the order granting a writ of mandamus. For the reasons the district court ably articulated in its memorandum order, the plaintiffs' request to depose select defendants in this case does not create the "extraordinary situation[]" required to justify the "drastic remedy" of this Court's interference in the discovery process. *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (internal quotation marks omitted). The majority's invocation of a drastic and extraordinary remedy to preclude deposition of four relatively low-ranking officials, who appear to be the only people that can provide the relevant information, has no equal in the caselaw.

I.

Plaintiffs, several former employees of the United States Agency for International Development ("USAID") brought this suit against current and former federal government officials. The plaintiffs' primary claims are that defendants violated separation of powers principles by dismantling USAID and that defendants violated the Appointments Clause of the Constitution when Elon Musk wielded authority to shutter USAID without proper appointment. Defendants argue that all challenged actions are lawful exercises of executive power and that it was not Musk, but other duly appointed officials, who carried out the challenged actions.

Plaintiffs have pursued several avenues of discovery in the hope of acquiring information about various defendants' role in shutting down USAID. Defendants described that they have produced "four depositions, thousands of pages of documents, and responses to nearly two dozen interrogatories." Petition for Writ of Mandamus at 11.

Plaintiffs claimed, and defendants did not contest, that less intrusive discovery tactics have not yet uncovered evidence concerning defendants' roles in shutting down USAID, so plaintiffs sought to depose defendants Elon Musk, Peter Marocco, Amy Gleason, and Jeremy Lewin.[1] Defendants requested a protective order precluding depositions of Musk, Marocco, and Lewin, arguing that caselaw prohibits depositions of high-ranking government officials outside of exceptional circumstances.

The district court declined to issue a protective order. It questioned whether the three officials qualified as high-ranking officials, since the cited case law frequently permitted depositions of officials that appear to outrank these four. But even if they did qualify, the district court ruled that the three defendants "likely have personal, first-hand knowledge of facts relevant and essential to the resolution of this case." *Does v. Musk*, 2026 WL 295364, at *3 (D. Md. Feb. 4, 2026). The district court agreed that defendants had "not responded adequately or at all" to requests for information related to "certain key decisions, including the decision to shut down USAID headquarters and to shut down the USAID website." *Id.* The district court went even further, indicating that defendants had "effectively acknowledged that these orders were given orally, with no documentary record, such that the only evidence on these questions would be the oral testimony of the officials present when the decisions were made." *Id.* at *4.

---

[1] Respectively, a former Senior Advisor to the President; a former Acting USAID Deputy Administrator; an Acting Administrator of the United States DOGE Service; and a former USAID Deputy Administrator.

Defendants petitioned this court for a writ of mandamus in a bid to block the depositions of Musk, Marocco, Gleason, and Lewin.[2]

II.

The writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947). The majority notes in passing that the party seeking the writ carries the burden of showing extraordinary cause, but its analysis exclusively discusses the plaintiffs' supposed burden to show extraordinary circumstances to depose high-ranking government officials. *See* Maj. Order at 3-4. I dispute that the plaintiffs need to make this showing, given the relatively low rank of the government defendants here. But in any case, a burden on plaintiffs does not excuse the government's high burden to claim the writ of mandamus. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (discussing the high burden carried by the petitioner even when petitioner raises a separation of powers defense). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Id.* at 380 (internal citations omitted).

It is profoundly ordinary that subcabinet officials and former subcabinet officials sit for depositions. In two cases where this Circuit has considered similar questions, we granted one writ of mandamus precluding a deposition of the Administrator of the Environmental Protection Agency, at that point a Cabinet official, but we permitted the

---

[2] The district court separately indicated that its ruling applied to Gleason as well.

9

deposition of the Director of the Office of Thrift Supervision, an agency within the Department of the Treasury. *In re McCarthy*, 636 F. App'x 142 (4th Cir. 2015); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991). In fact, in the typical case in which a high-ranking official petitions to avoid deposition, courts inquire whether a subordinate could sit for the deposition instead. *See In re U.S. Dep't of Educ.*, 25 F.4th 692, 704–05 (9th Cir. 2022) (considering the deposition testimony of Undersecretaries of Education to determine whether plaintiffs had shown it was necessary to depose the Secretary of Education); *id.* at 702 (describing the Supreme Court's order staying the deposition of the Secretary of Commerce but permitting depositions of other officials, including an Assistant Attorney General at the Department of Justice) (citing *In re Dep't of Com.*, 586 U.S. 956 (2018) (mem.)); *In re U.S.*, 624 F.3d 1368, 1369–70 (11th Cir. 2010) (accepting an Assistant Administrator of the Environmental Protection Agency as a substitute for the Administrator); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (accepting the Vice President's Deputy Chief of Staff as an adequate substitution for the Vice President's Chief of Staff).

Defendants here include two former USAID Deputy Administrators (one former Acting Deputy Administrator, in fact), and one Acting Administrator of the United States DOGE Service. They also include one Senior Advisor to the President, a title which appears to correspond to an entirely informal role. It is evident on its face that these positions do not qualify for the special protections that case law has afforded to the government's highest-ranking officers. If plaintiffs may take depositions of officials in Senate-confirmed positions, including Assistant Administrators, Undersecretaries, and

Assistant Attorneys General, as well as heads of subcabinet agencies, such as the Director of the Office of Thrift Supervision, I fail to see how any of these defendants can claim that their positions entitle them to a protective order.

Defendants do not even attempt to suggest adequate substitutes for their depositions. They provide the names of no other officials who would be better placed to answer plaintiffs' questions, aside from the four officials whom plaintiffs *already deposed*. Petition for Writ of Mandamus at 30. But as plaintiffs indicated, and the district court agreed, the discovery process so far has failed to provide evidence addressing "certain key decisions, including the decision to shut down USAID headquarters and to shut down the USAID website." *Does v. Musk*, 2026 WL 295364 at *3 (D. Md. Feb. 4, 2026). Accepting the findings of the district court, defendants' halfhearted attempt to propose a substitute is inadequate.

III.

My colleagues in the majority encourage the plaintiffs to pursue other discovery avenues before requesting to depose these particular defendants. As defendants conceded, however, plaintiffs have already "received substantial discovery." Petition for Writ of Mandamus at 11. The discovery requests have pursued all the relevant channels—in addition to "extensive written discovery," comprising more than 2,500 pages of documents, plaintiffs submitted nearly two dozen interrogatories to the State Department, the Secretary of State, USAID, USDS, and Gleason. *Id.* at 11–12. Plaintiffs have deposed four subordinate members of USAID, including former Acting Administrator Jason Gray. *Id.* at 11.

In light of the substantial discovery that has already occurred, I would not dictate to the plaintiffs that they must exhaust additional discovery tools before the district court permits their deposition. Nor would I dictate to the district court, whose familiarity with the facts in this case far outstrips our own, the order in which discovery must proceed. This Court is typically hesitant to involve itself in "matters more properly managed by trial courts," of which the discovery process is a prime example. *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994).

Instead, I would defer to the district court's determination that there is no alternative means for plaintiffs to secure the information they seek. As the district court explained, defendants have been ordered several times to produce other sources of information about the specific actions related to the shutdown of USAID. In response to plaintiffs' interrogatories, defendants "have not responded adequately or at all." *Does v. Musk*, 2026 WL 295364 at *3 (D. Md. Feb. 4, 2026). When the district court ordered production of documents related to the challenged actions, defendants "failed to provide evidence addressing these issues in relation to certain key decisions." *Id.* The requested information is either available through other means or it is not. Defendants cannot have it both ways.

IV.

Given the inadequate discovery responses by defendants thus far, I am deeply concerned that granting this writ of mandamus frustrates justice by broadly immunizing government officials who have historically been subject to depositions. I am encouraged by the majority's indication that this order does not close the door on future depositions of

these defendants.  But given the defendants' failures to make the extraordinary showings required for a writ of mandamus, I would deny the petition today.